# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ASANTE KWAKU BERKO,<br><br>        Defendant. | Case No. 20-Cr-328 (DG)<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT AND MOTION TO SUPPRESS MATERIALS SEIZED PURSUANT TO SEARCH WARRANT**<br><br>ORAL ARGUMENT REQUESTED |

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................1

I.    The Indictment Was Improperly Sealed ................................................................................1

      A.    The Reasons Given For Sealing The Indictment Were False ..................................1

      B.    Extradition from Ghana was Not Futile....................................................................4

      C.    Although Not Required – Mr. Berko was Prejudiced...............................................5

II.    The Defendant's Right to a Speedy Trial Has Been Violated ..............................................6

      A.    The Delay was Uncommonly Long and the Government's Fault ...........................7

      B.    The Delay was Prejudicial ........................................................................................8

III.    The Email Search Warrant was Facially Deficient................................................................9

CONCLUSION................................................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Doggett* v. *United States*,
    505 U.S. 647 (1992)..................................................................................................7, 9

*Rivera* v. *United States*,
    928 F.2d 592 (2d Cir. 1991).............................................................................................11

*United States* v. *Blanco*,
    861 F.2d 773 (2d Cir. 1988)...........................................................................................4, 5

*United States* v. *Cabral*,
    979 F.3d 150 (2d Cir. 2020)................................................................................................4

*United States* v. *Deglomini*,
    111 F. Supp. 2d 198 (E.D.N.Y. 2000) ................................................................................5

*United States* v. *Heckler*,
    428 F. Supp. 269 (S.D.N.Y. 1976) .....................................................................................6

*United States* v. *Helton*,
    314 F.3d 812 (6th Cir. 2003) ............................................................................................10

*United States* v. *Khan*,
    575 F. Supp. 3d 490 (S.D.N.Y. 2021)..............................................................................4, 5

*United States* v. *Leaver*,
    358 F. Supp. 2d 255 (S.D.N.Y. 2004).................................................................................4

*United States* v. *Lull*,
    824 F.3d 109 (4th Cir. 2016) ..............................................................................................9

*United States* v. *Moreno*,
    789 F.3d 72 (2d Cir. 2015).................................................................................................7

*United States* v. *Ostroff*,
    340 F. Supp. 2d 362 (S.D.N.Y. 2004).................................................................................7

*United States* v. *Rajaratnam*,
    No. 09 Cr. 1184 RJH, 2010 WL 3219333 (S.D.N.Y. Aug. 12, 2010)....................................11

*United States* v. *Rocha-Gomez*,
    412 F. Supp. 3d 369 (S.D.N.Y. 2019)..............................................................................9, 10

*United States* v. *Salzmann,*
    548 F.2d 395 (2d Cir. 1976)..................................................................................................5

*United States* v. *Srulowitz,*
    819 F.2d 37 (2d Cir. 1987)....................................................................................................1

*United States* v. *Watson,*
    599 F.2d 1149 (2d Cir. 1979)................................................................................................7

*United States* v. *Weiss,*
    No. 92 Cr. 890, 1993 WL 256707 (S.D.N.Y. July 7, 1993) ..............................................1, 4

**PRELIMINARY STATEMENT**

Defendant Asante Kwaku Berko respectfully submits this reply memorandum of law in further support of his motion to dismiss the Indictment with prejudice and suppress all search warrant evidence.

**ARGUMENT**

**I.   The Indictment Was Improperly Sealed**

The Government has failed to establish that it had a reasonable and good faith basis for sealing the Indictment and the multi-year delay in unsealing the Indictment was unreasonable. Accordingly, this case is barred by the statute of limitations and should be dismissed with prejudice. *See United States* v. *Srulowitz*, 819 F.2d 37, 40 (2d Cir. 1987).

   A.   The Reasons Given For Sealing The Indictment Were False

The Government does not dispute that it "bears the burden of demonstrating that there were legitimate prosecutorial purposes for sealing." *United States* v. *Weiss*, No. 92 Cr. 890, 1993 WL 256707, at *1 (S.D.N.Y. July 7, 1993). To satisfy its burden, the Government references a sealing form it claims was submitted to Magistrate Judge Robert M. Levy on August 26, 2020, the same day the grand jury returned the Indictment, explaining its reasons for sealing. (Opp'n Br. 4, Dkt. No. 37).

As an initial matter, despite Mr. Berko's specific request for documentation related to the Government's sealing request (*see* Opening Br. 6, Dkt. No. 35), this document was never provided to the defendant.[1] Not only has it remained unproduced, it appears that the Government did not seek to add it to the docket until July 9, 2025 (*see* Boone Reply Decl., Ex. A), just days after the

---

[1] In addition, on March 4, 2025, defense counsel put the Government on notice in a court conference that it was considering filing a motion alleging violations of the Speedy Trial Act. (Opening Br. 15, Boone Decl. Ex. G, Dkt. No. 34-7). On April 30, 2025, defense counsel submitted a letter to the Government requesting dismissal of the Indictment and specifically challenged the sealing of the Indictment, among other things. (Boone Reply Decl., Ex. B). Nevertheless, the Government never produced the sealing form.

1

defendant had already filed his motion to dismiss on July 1, 2025, but weeks before the Government's opposition brief was due on July 22, 2025. As discussed later, there are several other documents the Government relies on in its opposition brief that have yet to be provided to the defense and/or were not unsealed until after the defendant's motions were filed. It is defense counsel's hope (and expectation) that the Government is not seeking a strategic advantage by withholding or delaying the production of documents that are relevant to Mr. Berko's defense.

In any event, the sealing form presented to Magistrate Judge Levy, dated August 26, 2020, contained statements the Government knew were false at the time and therefore could not have been properly relied upon to justify the sealing of the Indictment. In the form, the Government stated that it was seeking to seal the Indictment, "FOR EXAMPLE: . . . to ensure that the defendant does not learn that he is under indictment and to prevent him from fleeing justice to avoid arrest and prosecution." Dkt. No. 3-2. The Government noted that, "the defendant is currently at liberty overseas, and the government plans to effectuate his arrest in the coming weeks when the defendant travels to a country from which he is extraditable." Dkt. No. 3-2.

The Government's representations in the sealing form were false in two material respects. First, at the time of the sealing request, the Government knew that it could not effectuate Mr. Berko's arrest in the "coming weeks." Dkt. No. 3-2. According to the affidavit of Justin McNair, the lead case agent, a Wanted Person Diffusion Notice ("Diffusion Notice") was not submitted to INTERPOL member countries until January 26, 2021, and the defendant was not arrested until November 3, 2022. (Opp'n Br., Ex. D ¶¶ 8, 10). As the Government was several months away from even submitting a Diffusion Notice, it must have known that an arrest was not going to be effectuated in the "coming weeks." Dkt. No. 3-2.

2

Second, the form falsely suggested that the Government believed at the time of sealing that Mr. Berko was not in a "country from which he is extraditable." Dkt. No. 3-2. Yet, there is no dispute that on May 18, 2017, Mr. Berko informed the Government in a proffer that he was splitting his time between Ghana and London (*see* Opening Br. 3; Opp'n Br. 11), or that both Ghana and the United Kingdom in fact had extradition treaties with the United States. (Boone Reply Decl. Ex. C, at 172, 469).[2]

Moreover, as made clear in the Opening Brief, the sealing of the Indictment was unnecessary as Mr. Berko was cooperating with the Government. (*See* Opening Br. 6-7). In an odd twist, the Government now seeks to use Mr. Berko's cooperation against him. For the first time since Mr. Berko's interview with the DOJ, the Government now conveniently claims that Mr. Berko lied in his proffer. (Opp'n Br. 11). This has never been communicated to Mr. Berko's counsel and the Government has not charged Mr. Berko with making any false statements. (Opening Br., Loewenson Decl., ¶¶ 7-8, Dkt. No. 33). The Government also now claims that its decision to grant Mr. Berko a "safe passage letter" is evidence that he was a flight risk. (Opp'n Br. 11). This is nonsensical. A lawyer's decision to seek a "safe passage letter" for a client to facilitate an interview with the DOJ does not suggest that his/her client is a fugitive, but the opposite.[3]

---

[2] To the extent that the Government claims that it believed extradition to Ghana would have been futile, Agent McNair's affidavit alleges that he did not learn that until August 27, 2020, the day after the sealing form was filed. (Opp'n Br., Ex. D ¶ 4).

[3] The Government also claims that Mr. Berko was a flight risk given that he allegedly "did not voluntarily travel to the United States at any time" after his proffer with the Government. (Opp'n Br. 11). To support this claim, the Government cites to travel records that were never provided to the defense and appear on their face to have been generated on July 11, 2025, after the defendant's motions were filed. In any event, these records are evidence of nothing. (Opp'n Br., Ex. C). It is entirely unremarkable that an individual who is living overseas and learns that he/she is the subject of a DOJ investigation does not plan trips to the United States until that matter is resolved through his/her counsel.

B. <u>Extradition From Ghana Was Not Futile</u>

The Government has failed to establish that it exercised "reasonable care in locating the defendant." *Weiss*, 1993 WL 256707, at *6. The Opening Brief showed that the Government failed to take the most basic step to effectuate Mr. Berko's arrest – seeking his extradition from Ghana. (Opening Br. 8). The Government concedes that it did not seek Mr. Berko's extradition from Ghana, but claims its inaction was justified because "extradition from Ghana would be futile . . . given the complicity of high-ranking [Ghanaian government officials] . . . in the defendant's criminal scheme." (Opp'n Br. 10). The Government's argument is deficient for several reasons.

First, "the Government has a duty to seek extradition, unless such an effort would be futile." *United States* v. *Leaver*, 358 F. Supp. 2d 255, 265 (S.D.N.Y. 2004). While in some cases the Second Circuit has excused the government from this duty because an extradition request would have been a futile exercise, in most such cases it has grounded its determination in the legal unavailability of extradition. *See, e.g.*, *United States* v. *Cabral,* 979 F.3d 150, 158–59 (2d Cir. 2020); *United States* v. *Blanco*, 861 F.2d 773, 778 (2d Cir. 1988). That is not this case. Indeed, the Department of Justice regularly extradites defendants from Ghana, including Ghanaian citizens. (Boone Reply Decl., Exs. D, E, F, G, H).

Second, the Government did not have a reasonable basis to conclude that, as a practical matter, extradition from Ghana would have been futile given the alleged involvement of Ghanian officials in the charged scheme. As Judge Jed S. Rakoff noted in *United States* v. *Khan*, "according to DOJ policy, the first step in any extradition case should be to contact OIA [the Department of Justice, Office of International Affairs], since OIA attorneys are subject-matter experts on extradition and will advise prosecutors about the potential for extradition in a given case." 575 F. Supp. 3d 490, 502 (S.D.N.Y. 2021) (internal quotations omitted). That did not happen here. Instead, the Government relied on a single conversation its lead case agent, Justin McNair, had

4

with an unnamed FBI legal attaché in Ghana. (Opp'n Br. 10). That is not a substantial basis from which to make an extradition decision. Indeed, Agent McNair's affidavit is completely devoid of any facts establishing the legal attaché's expertise in extradition proceedings or what information she considered in giving her opinion, other than a general understanding that the defendant had "political connections in Ghana."[4] (Opp'n Br., Ex. D ¶ 4).

In any event, "it is the Assistant United States Attorneys on the prosecution team who are ultimately responsible for deciding whether or not to seek extradition of a fugitive," not the case agent. *Khan*, 575 F. Supp. 3d at 502. Agent McNair's affidavit does not (and cannot) speak to the decision-making process of the federal prosecutors; they must speak for themselves, including why they chose not to follow DOJ policy by consulting with OIA attorneys. *See, e.g.*, *Blanco*, 861 F.2d at 778; *United States* v. *Salzmann*, 548 F.2d 395, 403 n.10 (2d Cir. 1976). At a minimum, an evidentiary hearing is needed to probe the prosecutors' actions, if dismissal is not granted on the briefing.

    C.    <u>Although Not Required – Mr. Berko Was Prejudiced</u>

The Government does not challenge the holding in *United States* v. *Deglomini* that "no showing of prejudice ought to be required when the government unreasonably delays unsealing the indictment." 111 F. Supp. 2d 198, 202 (E.D.N.Y. 2000). Nevertheless, the Government claims that Mr. Berko cannot show that he was prejudiced because he was aware of the investigation "since at least February 2017" and therefore has been "well-positioned to interview witnesses, preserve documents and record his recollections." (Opp'n Br. 12). The Government's argument

---

[4] As this prosecution team knows, the DOJ is more than capable of extraditing defendants with supposed "political connections." In a recent high-profile case prosecuted by this district's United States Attorney's Office, Ng Chong Hwa, also known as "Roger Ng," a citizen of Malaysia, was extradited from Malaysia to the United States to face FCPA charges related to paying bribes to multiple government officials in Malaysia, among other charges. *See* Boone Reply Decl., Ex. I. At least one member of the prosecution team in the Roger Ng matter, Katherine A. Nielson, is also a prosecutor in the instant matter and is thus particularly familiar with the DOJ's extradition capabilities.

5

misses the mark. The operative question is not whether the defendant could have jotted notes in a notepad nearly a decade ago about what he and potential witnesses remembered in 2017, but whether the passage of time caused by the Government has affected his present memory, the location of those witnesses, and the present memory of those witnesses. *See United States* v. *Heckler*, 428 F. Supp. 269, 272 (S.D.N.Y. 1976). And as the Opening Brief itself showed, it has done so. (Opening Br. 10).

## II.  The Defendant's Right To A Speedy Trial Has Been Violated

The Opening Brief showed that the Government's delay and lack of diligence in arresting Mr. Berko also violated his right to a speedy trial under the Sixth Amendment. In attempting to diminish this fact, the Government has inadvertently strengthened the need for dismissal. In the Government's opposition brief, it revealed for the first time that the Government had obtained a complaint and an arrest warrant against Mr. Berko on January 31, 2019, more than a year and a half before the Indictment and related arrest warrant were issued on August 26, 2020. (Opp'n Br. 3-4). At no point since Mr. Berko was first presented in this district on July 16, 2024, has the Government produced the charged complaint and related arrest warrant, or even hinted at its existence. Like the sealing form, it appears that the complaint was not made available to view on the docket until after the defendant's motions were due, but before the Government's opposition brief was filed.[5] This was clearly improper and underscores the need for an evidentiary hearing in the event this Court does not dismiss the Indictment on the briefing. As discussed below, it also results in weighing the *Barker* factors even more favorably for the defense.

---

[5] As of the time of this filing, the arrest warrant related to the complaint is still unable to be viewed on the docket.

6

A.      The Delay Was Uncommonly Long And The Government's Fault

In its opposition brief, the Government encourages this Court to disregard the Supreme Court's decision in *Doggett* v. *United States*, 505 U.S. 647 (1992), making clear that the speedy trial right is triggered by "arrest, indictment or other official accusation." *Id.* at 655. Instead, the Government suggests, this Court should follow the Second Circuit ruling in *United States* v. *Watson*, 599 F.2d 1149 (2d Cir. 1979), a case that predated *Doggett* by more than a decade, which found that that the speedy trial right is triggered by the unsealing of a sealed indictment. (*See* Opp'n Br. 14). Respectfully, this Court should do no such thing. Ignoring the ruling in *Doggett* directly violates the entire principle of *stare decisis* and is therefore improper.[6]

Given the newly revealed information regarding a January 31, 2019, complaint and arrest warrant against Mr. Berko, the length of the delay between "official accusation" and trial is even longer than previously understood. As such, the delay is even more presumptively prejudicial and "uncommonly long" than the defendant showed in his Opening Brief. Likewise, the fact that the Government had an arrest warrant against Mr. Berko a year and a half earlier than previously revealed casts further doubt on whether the Government made a "serious effort to locate or apprehend" the defendant. *United States* v. *Ostroff*, 340 F. Supp. 2d 362, 369 (S.D.N.Y. 2004). Indeed, the Government provides no information as to what efforts the Government made to arrest Mr. Berko from January 31, 2019, to when it obtained the Indictment on August 26, 2020.

---

[6] The Government's reliance on *United States* v. *Moreno*, 789 F.3d 72 (2d Cir. 2015), as evidence that *Watson* is good law in the Second Circuit, is misplaced. To the extent the Circuit Court in *Moreno* relied on the holding in *Watson*, it appeared to be limiting the application of *Watson* to specific cases like *Moreno* where the defendant was not challenging the delay in unsealing the indictment but rather the delay in arresting the defendant after the unsealing. In *Moreno,* there were multiple defendants in several related cases who were arrested at different times pursuant to a takedown by the FBI. *Id.* at 76. Only six days lapsed between the sealing of the indictment and the unsealing of the indictment, but 27 months passed before Moreno himself was arrested. *Id.* at 76–77. The defendant in *Moreno* challenged that 27-month delay, not the delay from the sealing of the Indictment six days prior. *Id.* at 77.

7

In a desperate attempt to distract from its failure to honor Mr. Berko's right to a speedy trial, the Government curiously claims that it is the defendant who has "delayed at every juncture" the progress of this case. (Opp'n Br. 17). To support this argument, the Government cites to two status conferences in this case, March 4, 2025, and May 1, 2025, during which the Government claims "the defendant resisted setting a pretrial motion briefing schedule." (*Id.*). Oddly, the Government does not provide the transcript for the May 1, 2025, conference it references. In any event, the Government is wrong. At the conference on March 4, 2025, it was the Government who sought to have a status conference in 30 days, and sought to delay setting a motion schedule, because it needed more time to complete its discovery production. (Opening Br., Ex. G, Tr. 3:18-25).

To this day, the Government is still struggling to fulfill its discovery obligations. As stated in the Opening Brief, the Government produced discovery as recently as June 23, 2025, just days before Mr. Berko's motions were due in this case. And as stated throughout the instant Reply, the Government has referenced several documents in its opposition brief that it has yet to produce.

B.  The Delay Was Prejudicial

Mr. Berko's Opening Brief showed that the Government's delay is presumptively prejudicial. That argument has only gotten stronger now that it has been revealed that the Government's delay in finding Mr. Berko was nearly four years, not two. This is especially true given that the Government could have easily told Mr. Berko's prior counsel on April 17, 2020, when he called to check in on the status of the case, that Mr. Berko had already been charged by complaint and an arrest warrant had been issued. (Opening Br., Loewenson Decl., ¶ 5, Dkt. No. 33). Instead, the DOJ refused to engage with counsel and delayed locating and arresting the defendant for another two and a half years. Now, there is additional prejudice to Mr. Berko with respect to his memory, the location of witnesses, who might be able to support his defense, and

8

the memory of those witnesses. To the extent the Government claims that the defendant must demonstrate specific, affirmative proof of prejudice, they are mistaken. As the Supreme Court noted in *Doggett*, "consideration of prejudice is not limited to the specifically demonstrable[,]" since "time's erosion of exculpatory evidence and testimony can rarely be shown." *Doggett*, 505 U.S. at 655 (internal quotations omitted).

### III. The Email Search Warrant Was Facially Deficient

In another example of delayed disclosure of relevant information to the defense, the Government reveals for the first time in its opposition brief (in a footnote) that the confidential human source ("CHS") whose statements served as the basis for the email search warrant was receiving money from the Government while providing information against Mr. Berko.[7] (Opp'n Br. 2, n.2). It now makes sense why the Warrant Affidavit fails to provide any information whatsoever regarding the CHS's credibility or reliability – it is because the CHS has neither. There is no question that this information should have been disclosed to the Magistrate Judge. *See United States* v. *Rocha-Gomez*, 412 F. Supp. 3d 369, 374–75 (S.D.N.Y. 2019) (critiquing a search warrant affidavit for failing to establish the informant's reliability and motives); *see also United States* v. *Lull*, 824 F.3d 109, 116–17 (4th Cir. 2016) (finding that adverse information about informant's credibility omitted from the search warrant affidavit "was clearly relevant to the magistrate's probable cause determination"). This is especially true given how heavily the Warrant Affidavit relied on statements made by the CHS to make its probable cause showing. As stated in the Opening Brief, all direct references to bribe payments in the affidavit are based on information the

---

[7] The defendant supplements his motion with a sworn affidavit confirming a privacy interest in the relevant email account. (A. Berko Reply Decl.)

9

CHS purportedly provided to the Government. And the Government does not dispute that Agent McNair did nothing to corroborate any of the CHS's statements.[8]

The Government attempts to explain its omission away by claiming that since the CHS was not paid by the DOJ, but by another federal agency, the CHS was more akin to a "private informant" whose veracity is "generally presumed". (Opp'n Br. 21–22). We are unaware of any case law supporting the proposition that a paid source (whether by the DOJ or another federal agency) is equivalent to an anonymous tipster, nor does the Government cite to any legal authority. That is because the proposition is untrue. A source providing information to the DOJ at the request of another federal agency that is paying him/her is potentially financially motivated to provide information that is false but perceived to be helpful to the DOJ's investigation. At a minimum, this possibility should have been disclosed to the Magistrate Judge. *See Rocha-Gomez*, 412 F. Supp. 3d at 374 (noting that courts consider "what the informant's motive was in disclosing the information" to determine his/her reliability).

Moreover, the good-faith exception does not apply here as no well-trained officer could believe that a warrant that is based on conclusory and uncorroborated statements from an untested source and fails to disclose the potential financial motivation of that source is valid. *See United States* v. *Helton*, 314 F.3d 812, 824–25 (6th Cir. 2003). To the contrary, "[r]ecklessness may be inferred where the omitted information was 'clearly critical' to the probable cause determination."

---

[8] At most, the Government claims that the Warrant Affidavit references documents that on their own establish probable cause. (Opp'n Br. 22). As made clear in our Opening Brief, that is not true. (Opp'n Br. 20-21). Indeed, even in making this claim, particularly with respect to "emails concerning the reliance on relatives and associates of the President to secure the Power Plant deal," (Opp'n Br. 22), the Government mostly references information provided by the CHS and not in emails. (*See* Opp'n Br., Ex. B ¶¶ 17-19). That is because the emails and documents referenced in the Warrant Affidavit do not, by themselves, speak to a bribery scheme or otherwise establish probable cause.

*Rivera* v. *United States*, 928 F.2d 592, 604 (2d Cir. 1991). Accordingly, the Court should exclude all evidence resulting from the search of Mr. Berko's personal email account.[9]

## CONCLUSION

For the aforementioned reasons, the defendant respectfully requests that the Indictment be dismissed with prejudice and all evidence resulting from a search of the defendant's personal email account be suppressed.

Dated: August 5, 2025  Respectfully submitted,

By: */s/ Robert L. Boone*

Robert L. Boone
Boyd M. Johnson III
Eliot Kim
Emily Gruener

WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 295-6314
robert.boone@wilmerhale.com
boyd.johnson@wilmerhale.com
eliot.kim@wilmerhale.com
emily.gruener@wilmerhale.com

*Attorneys for Defendant Asante Berko.*

---

[9] Alternatively, a *Franks* hearing is warranted so that the Court can consider the full record, including testimony regarding Agent McNair's state of mind at the time he omitted critical information from the Warrant Affidavit. *See United States* v. *Rajaratnam*, No. 09 Cr. 1184 RJH, 2010 WL 3219333, at *2 (S.D.N.Y. Aug. 12, 2010) (finding that material omissions in wiretap application warranted *Franks* hearing).

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2025, I electronically filed the above document with the Clerk of the Court using the CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated: August 5, 2025

By: */s/ Robert L. Boone*
Robert L. Boone