Clerk's Office
Filed Date: 7/24/2026

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

Hon. Judge Diane Gujarati
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Contemporaneous Press Access To Court Proceedings and Trial Exhibits

Dear Judge Gujarati,

We are reporters from Law360, the New York Times, MLex and Courthouse News, and we write to your honor in regard to the upcoming trial in U.S. v. Berko. We are concerned about press access to trial exhibits, specifically, the excerpts of the Nov. 1, 2016 video recording that the government intends to introduce as evidence at trial.

Based on the discussions we've heard during pretrial conferences between your honor, the government and attorneys for Mr. Berko, we understand that your honor plans to provide jurors with headphones and transcripts with English language translations of what is said in the recordings. However, if we understand correctly, the press will not be allowed to have access to headphones, and thus will not be able to hear what the jury hears, see what the jurors see and read what the jury reads, contemporaneously.

Respectfully, we believe this course of action would be improper under well-established law in the Second Circuit, the U.S. Supreme Court and in this district.

Criminal trials are presumptively open, and the Supreme Court has recognized that the right of access for the press and public to criminal trials is paramount. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980) "it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted[.]"

See also, Globe Newspaper Co. v. Superior Ct., 457 U.S. 596 (1982) at 604–05 (quotations omitted) ("to the extent that the First Amendment embraces a right of access to criminal trials, it is to ensure that [the] constitutionally protected discussion of governmental affairs is an informed one.").

As we act as surrogates for the public, news organizations have standing to challenge protective orders or sealing orders in cases of public interest, and timeliness is not an issue. See e.g., In re Pineapple Antitrust Litig., No. 04 MD. 1628 RMB MHD, 2015 WL 5439090, at *2 (SDNY Aug. 10, 2015)

The Second Circuit has found that the presumption of access to criminal trials extends to trial records as well, "there is a presumption in favor of public inspection and copying of any item entered into evidence at a public session of a trial." In Re Application of National Broadcasting Company, Inc. Etal., Applicants- Appellees.United States of America v. Michael O. Myers et al.,

Defendants-appellants, 635 F.2d 945 (2d Cir. 1980)

Time and again, the Second Circuit has driven this point home. It holds that the public has "'an especially strong'" right of access to evidence introduced in trials," which includes videotape evidence and videotaped deposition testimony. See U.S. v. Amodeo, 71 F.3d 1044 (2d Cir. 1995). ("Amodeo II")

With respect to evidence introduced at trial that consists of video and audio recordings, the Second Circuit has found them to be "judicial records," see United States v. Graham, 257 F.3d 143, 147 (2d Cir. 2001). Judicial records are subject to the presumption of access, and that presumption is not overcome by the fact that such evidence would boost the public's awareness of the case.

Relatedly, the Second Circuit in Graham — concerning video recordings presented by the government in court that were made available to the media — found that the possibility of a tainted jury pool as a result of a case's notoriety to be "too speculative to justify denial of the public's right to inspect and copy evidence presented in open court."

"We disagree...that the likelihood of such enhanced awareness of the tapes poses the kind of risk to fair trials for [the] defendants that justifies curtailing the public's right of access to courtroom evidence."

The Second Circuit reaffirmed its position on access to video evidence in N.Y. Civil Liberties Union v. N.Y. City Transit Auth.,684 F.3d 286 (2d Cir. 2012). "Our circuit has further held that the presumption of access applies to other aspects of criminal trials as well, including judicial records such as videotapes of defendants," citing In re Application of Nat'l Broad. Co.

Since the video recordings at issue here are in fact judicial records, it follows that the Second Circuit considered the timeliness of access to such records, finding that, "a presumption of immediate access applies under both the common law and the First Amendment." See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006).

Lugosch continues, (quoting Grove Fresh Distrib., 24 F.3d at 897). ("[O]nce found to be appropriate, access should be immediate and contemporaneous.... The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression." (internal citations omitted)).

We could not agree more, contemporaneous access to these video excerpts of the Nov. 1, 2016 recording and the accompanying English language transcripts is very important to us and our readers. Our position is the same for any other audio or visual evidence that's introduced at this trial. We want to see what the jury sees and hear what the jurors hear, when they see and hear it.

In considering what qualifies as access, the Second Circuit in ABC, Inc. v. Martha Stewart, 360 F.3d 90 (2d Cir. 2004) agreed with the Third Circuit, citing its sister court's decision in U.S. v. Antar, 38 F.3d 1348 (3d Cir. 1994).

"[D]ocumentary access is not a substitute for concurrent access, and vice versa.... [W]here a right of access exists, a court may not deny access to a live proceeding solely on the grounds that a transcript may later be made available."

Moreover, courts in this district have provided the press access to video and audio evidence, as well as transcripts, contemporaneously with the presentation of the evidence to the jury, with no disruption to the proceeding.

For example, we note the case of U.S. v Mark Johnson, #1:16-cr-00457, which was presided over by Judge Nicholas Garaufis. In that trial, audio recordings of phone calls were central to the government's case against the defendant, a former HSBC banker, and were played in open court. The press were given transcripts for the limited purpose of reading them while the recordings played, before handing them back. There was no disruption to the trial as a result of this limited accommodation.

Perhaps more analogous to this case was video and audio recordings introduced as evidence at the 2024 FCPA trial in U.S. v. Aguilar, #1:20-cr-00390, before Judge Eric Vitaliano. As is the case here, the Aguilar case featured video evidence of individuals speaking in a language other than English, and the audibility of the recordings was less than ideal at times. Yet the video was played in open court, with subtitles on the gallery screens so the press and public could observe. We recall no issue with the recordings being played with subtitles.

However, we understand that there are concerns in U.S. v. Berko about the audibility of the recordings, thus the headphones for the jury. Which is why we respectfully ask that the press be provided with headphones and transcripts whenever video or audio recordings are displayed for the jury at trial. We believe this narrow accommodation will pose no risk of disruption to the proceeding, or of interfering with Mr. Berko's right to a fair trial, and would be in line with the Second Circuit's expansive view of access to trial records.

Or, if that proves to be a problem, we ask that the video be played for the gallery, either with subtitles or with access to transcripts continuing English language translations of the spoken words in the video.

From what we can discern from court documents and proceedings thus far in this case, the Nov. 1, 2016 recording, or excerpts thereof, is particularly important evidence in the government's case. Our ability to fairly and accurately report on this trial will be significantly hindered if we are denied access to this evidence.

As the Second Circuit found in Lugsch, the presumption of access arises from the need for federal courts to "to have a measure of accountability and for the public to have confidence in

the administration of justice."

"[P]rofessional and public monitoring is an essential feature of democratic control...Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions." (Lugsch)

We agree. This trial is a matter of significant public interest, and we believe the press, as a surrogate for the public, plays an important role when it comes to court proceedings and the administration of justice.

However, should anyone doubt our good faith, we stand by our position, but we'd be remiss not to point out that the Second Circuit has found motive generally to be irrelevant when "defining the weight accorded the presumption of access[,]" and that "assessing the motives of journalists risk self-serving judicial decisions tipping in favor of secrecy."

"Where access is for the purpose of reporting news, moreover, those interested in monitoring the courts may well learn of, and use, the information whatever the motive of the reporting journalist." See Amodeo, 71 F.3d 1044 (2d Cir. 1995).

Thank you for your consideration of our request.

Stewart Bishop -- Law360
Nina Pullano -- Courthouse News
Samuel Rubenfeld -- MLex
Santul Nerkar -- The New York Times

# Stewart Bishop
Senior Reporter

✉ stewart.bishop@law360.com

🐦 @stewartbishop

☎ 347-406-0189

📍 111 W. 19th St., 5th Floor
New York, NY 10011

 **LAW360**

www.law360.com

# LAW360®

www.law360.com